| | |
|---|---|
| JAMES NEATON, ) | |
| ) | |
|    *Plaintiff,* ) | |
| ) | Case No. 1:09-cv-213 |
| v. ) | Judge Mattice |
| ) | |
| HARTFORD LIFE & ACCIDENT ) | |
| INSURANCE COMPANY, ) | |
| ) | |
|    *Defendant.* ) | |

## **MEMORANDUM AND ORDER**

Plaintiff James Neaton brought this action against Defendant Hartford Life & Accident Insurance Company ("Defendant") and alleged a cause of action under 29 U.S.C. § 1132(a)(1)(B). [Court Doc. 1, Compl.] The Complaint seeks judicial review of a termination of long-term disability ("LTD") insurance benefits under the Plan, which took effect as of July 16, 2008.

Before the Court are Plaintiff's Motion for Judgment on the Pleadings (essentially a motion for judgment on the administrative record) [Court Doc. 22] and Defendant's Motion for Judgment on the Pleadings [Court Doc. 25]. Pursuant to 28 U.S.C. § 636(b)(1), the Court referred this matter to United States Magistrate Judge Susan K. Lee for a Report and Recommendation ("R&R") on the above motions. Magistrate Judge Lee entered her R&R [Court Doc. 38] on October 13, 2010. Magistrate Judge Lee recommended that Plaintiff's Motion for Judgment on the Pleadings be denied and that Defendant's motion for judgment on the pleadings be granted. Both Plaintiff and Defendant filed timely objections and responses to those objections. [Court Docs. 39-41.]

For the reasons stated below, the Court **OVERRULES** Plaintiff's objections and

**ACCEPTS AND ADOPTS** Magistrate Judge Lee's Report and Recommendation.

## I. STANDARD OF REVIEW

The Court must conduct a *de novo* review of those portions of the R&R to which an objection is made and may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C). For those portions of the R&R to which objections have been filed, the Court will directly review the decision-making process underlying the Defendant's denial of benefits.

A claim under 29 U.S.C. § 1132(a)(1)(B) for denial benefits is to be reviewed "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the administrator or fiduciary is afforded discretion by the plan, the decision is reviewed under the arbitrary and capricious standard. *Evans v. Unum Provident Corp.*, 434 F.3d 866, 875 (6th Cir. 2006). The Plan documents here assert that the plan administrator has discretion to interpret Plan terms. (Administrative Record ("AR") at 33-34.) This Court will therefore conduct its review under the arbitrary and capricious standard.

Under 29 U.S.C. §1132(a)(1)(B), a court's review is limited to the administrative record as it existed when the plan administrator made its final decision. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378-79 (6th Cir. 2005). Arbitrary and capricious is one of the least demanding forms of review. *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). "Nevertheless, merely because our review must be deferential does not mean our review must also be inconsequential." *Id*. A court must

"review the quantity and quality of the medical evidence and the opinions on both sides of the issues." *Id*. at 172. If the administrative record does not show that the administrator offered a "reasoned explanation" based on substantial evidence, the decision is arbitrary or capricious. *Moon*, 405 F.3d at 379. Substantial evidence means "much more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McDonald*, 347 F.3d at 171.

## II. FACTS

The Report and Recommendation outlined the applicable facts at length. The parties have not objected to the facts statement contained in Magistrate Judge Lee's R&R. The Court finds no error in Magistrate Judge Lee's findings of fact. Accordingly, the Court hereby **ADOPTS BY REFERENCE** the entire "Background" section of the R&R. (Court Doc. 38, R&R at 2-10.)

## III. ANALYSIS

Plaintiff argues that Defendant acted arbitrarily and capriciously in denying his disability claim for two basic reasons. First,[1] Plaintiff asserts that Defendant acted arbitrarily and capriciously by relying on statements by a non-examining medical consultant to contradict statements by Plaintiff's treating dermatologist regarding his recovery time. (Court Doc. 39, Pl.'s Objs. at 2.) Second, Plaintiff claims that Defendant arbitrarily and capriciously relied on the conclusory statement of one of Defendant's employees to reach the conclusion that Plaintiff's level of necessary absenteeism would be accommodated by

---

[1] This is actually Plaintiff's second objection, but the Court has reversed them for ease of reference because Plaintiff's true first objection is more involved and is somewhat closely related to the outcome of the second.

employers. (*Id.*) Both issues essentially contest Defendant's conclusion with regard to whether or not Plaintiff could be accommodated to work from home considering his recovery time after each surgery he undergoes for the skin cancers he has as a result of Gorlin's syndrome.

Plaintiff first argues that Defendant's reliance on Dr. Petronic-Rosic's opinion was arbitrary and capricious because it was in conflict with his treating dermatologist's opinion of Plaintiff's recovery period requirements. (Pl.'s Objs. at 16-17.) Defendant asked Dr. Petronic-Rosic to conduct a peer review of Plaintiff's medical file in December 2008, and she initially stated that Plaintiff would require a recovery period of one week after each surgery. (AR at 188.) Plaintiff's treating dermatologist, Dr. Schuldenfrei, estimated that Plaintiff would require recovery of a "week or more." (*Id.* at 418.) During Plaintiff's appeal and shortly after Dr. Petronic-Rosic submitted her peer review report, Defendant asked Dr. Petronic-Rosic if her recovery estimate would change provided that Plaintiff could work from home, and she indicated that if he were working from home, a three to four day recovery period would be necessary. (*Id.* at 190.) Plaintiff argues on objection that Defendant's exclusive reliance on the opinion of a non-treating consultant, judgment of Plaintiff's credibility, and rejection of Dr. Schuldenfrei's opinion were arbitrary and capricious. (Pl.'s Objs. at 17-18.)

Magistrate Judge Lee found that Dr. Petronic-Rosic's opinion that Plaintiff would need three to four days of post-surgery recovery time if he worked from home was supported by the medical evidence in the record and was consistent with the opinion of Dr. Schuldenfrei, Plaintiff's treating dermatologist. (R&R at 16.) The Court agrees. Both Dr. Petronic-Rosic and Dr. Schuldenfrei estimated a week of recovery time after each surgery.

Dr. Petronic-Rosic was asked specifically if this estimate would be modified if Plaintiff were working from home; Dr. Schuldenfrei was not consulted on this issue. Dr. Petronic-Rosic, however, had just completed a review of Plaintiff's file during the pendency of his appeal, and Dr. Schuldenfrei's opinion is dated March 2008. Defendant did not act arbitrarily and capriciously in accepting Dr. Petronic-Rosic's opinion, which was reasonably amended to reflect that if Plaintiff were working from home, he would not need to have additional time off to account for bandage removal. Moreover, as to Plaintiff's credibility, there is no evidence in the record that Defendant or Dr. Petronic-Rosic impermissibly judged Plaintiff's subjective statements about his recovery time. Plaintiff's statement of disability and description of recovery times were not entirely supported by the record, including the recovery estimate provided by his own doctor, and it was not arbitrary and capricious for Defendant to accept Dr. Petronic-Rosic's opinion (which was consistent with Dr. Schuldenfrei) over Plaintiff's statement.

The Court does not dispute Plaintiff's representation that the recovery time for each surgery will vary, but it is not the Court's task to determine the actual amount of time it takes Plaintiff to recover after each and every surgery. (Pl.'s Objs. at 18.) The Court must determine whether Defendant's decision was arbitrary and capricious and whether it was supported by substantial evidence in the record. The Court finds that Dr. Petronic-Rosic's opinion was not at odds with the opinion of Dr. Schuldenfrei and concludes that Defendant's reliance on the opinion was reasonable.

Plaintiff's other, main objection is more involved. Essentially, Plaintiff asserts that there are multiple issues with the report of Defendant's Vocational Clinical Case Manager, upon which Defendant relied to reach its ultimate decision. The employability analysis

review states, in part:

> As indicated by the peer review of the medical the medical records reviewed span from 5/30/07 through 10/21/08, during which the claimant was seen for surgical intervention 6 times, in 1 year, 4 months and 21 days.
>
> Therefore it is reasonable the claimant is not having surgery monthly, but rather on a 2 month or greater basis as indicated by the medical records found in the file. Given the indication by the peer review clarification dated 2/11/09, the claimant would require 3 to 4 days off each time he has surgery, thus indicating on a bi-monthly basis or longer.
>
> It is reasonable given the common practice of employers, the sedentary nature of the claimant's occupation, and that the occupations identified can be full-filled by working from home, the claimant would reasonably be accommodated for a recovery period of 3 to 4 days bi-monthly, with additional allowances that could include Saturday and Sunday as recovery days.

(AR at 79.) Plaintiff first contests this opinion by arguing that the expert underestimated the number of absences Plaintiff would require because it underestimated the number of surgeries. (Pl.'s Objs. at 10.) Plaintiff asserts that the time frame used to reach this conclusion – May 2007 to September 2008 – is faulty and was improperly used to reach the conclusion that Plaintiff only required surgery bi-monthly. (*Id.*) Plaintiff claims that including May 2007 to September 2007 – a period before he even claimed disability – does not make sense, and further claims that the vocational expert improperly ignored the curettage and cautery ("C&C") procedures when forming the opinion. (*Id.* at 10-11.) Plaintiff contends that assessing the number of surgeries during alternative periods of time and including recovery time for the C&C procedures negates this opinion by establishing that he would have too many absences to be accommodated in any workplace. (*Id.* at 11.)

Plaintiff's other objection to Defendant's reliance on the vocational expert's opinion

-6-

is that it is conclusory and not supported by evidence or investigation. (*Id.* at 11-16.) Plaintiff argues that the expert had no basis for stating that the common practice of employers would allow for three to four days of absences every two months, and Defendant had an obligation to investigate this claim before relying on the statement. (*Id.* at 12-14.) Plaintiff draws a contrast between Defendant's reliance on the statement without investigation and the investigation Defendant conducted to determine if Plaintiff could work from home. (*Id.* at 13-14.) Finally, Plaintiff asserts that this opinion is not supported by government statistics for sick leave absences, and that his absences are far in excess of what the statistics state is typical or average for employees. (*Id.* at 14-15.)

Magistrate Judge Lee noted in the R&R that Defendant relied upon three pieces of evidence when it made the final decision upholding the denial of Plaintiff's benefits. (R&R at 9.) Defendant referred to the opinion of Dr. Petronic-Rosic that if Plaintiff was working from home, he would need three to four days for post-surgery recovery. (*Id.*) Based on the number of surgeries Plaintiff had from May 2007 to September 2008, Defendant estimated that Plaintiff would need surgery every two months or less frequently. (*Id.*) Finally, Defendant relied upon the occupational research survey which stated that Plaintiff could perform his work at home. (*Id.*) Assuming all these factors to be true, the vocational expert concluded that "given the common practice of employers," if Plaintiff worked from home, Plaintiff could be accommodated for three or four days of recovery time every two months, with allowances for Saturdays and Sundays as recovery days. (*Id.* at 9-10.)

Magistrate Judge Lee found that Defendant's estimate of the frequency of Plaintiff's surgeries, and the time frame used to calculate this estimate, was reasonable and

-7-

supported by the record. (*Id.* at 16-18.) Specifically, Magistrate Judge Lee found that May 2007 – the date of Plaintiff's first Moh's surgery – was a reasonable place to start counting, and that Plaintiff's preferred period from May 2008 to January 2009 was truncated to be favorable to his position, but Plaintiff had advanced no other reason why it would be the appropriate period. (*Id.* at 17.) Magistrate Judge Lee also compared the period used to other alternative and reasonable periods and found that they would not have been any more favorable to Plaintiff.[2] (*Id.* n. 14, 15.)

Magistrate Judge Lee helpfully summarized the dates and types of Plaintiff's surgeries dating from February 2006 through January 2009, along with citations to the record. (R&R at 9.) In sum, Plaintiff has had nine C&C procedures and seven Moh's surgeries. (*Id.*) The time period which Defendant used – May 2007 to October 2008 – includes the majority of these procedures (12 of the 16) and six of Plaintiff's seven Moh's surgeries. (*Id.*) Defendant's vocational expert used the information that Plaintiff had six Moh's surgeries over a 16 month period to determine that Plaintiff was not having surgery monthly but that surgeries were, on average, occurring once every two months or more.

---

[2]   Indeed, although Plaintiff argues that it makes no sense to include the period from May 2007 to September 2007 because this was before he claimed disability, using a period from September 2007 to October 2008 would give the Court five Moh's surgeries over a period of 13 months, which would be consistent with Defendant's finding that Plaintiff was undergoing surgery bi-monthly. Using a period that runs from September 2007 to January 2009 (the last surgery on record as of Plaintiff's appeal) would include six Moh's surgeries over a period of 16 months, which would also be consistent with this finding.

Plaintiff's proposed periods of time (January 2008 to January 2009, May 2008 to January 2009, etc) are generally more favorable to his position because Plaintiff includes all surgeries, both the Moh's surgeries and the C&C surgeries. Defendant's finding that Plaintiff had surgery bi-monthly, however, only contemplates recovery time for the Moh's surgeries.

Moreover, as the Court notes *infra*, Plaintiff's primary complaint was about the Moh's surgery, which provides more support for the time period chosen by Defendant because this period began to count from Plaintiff's first such surgery.

-8-

(AR at 79.) Plaintiff objects to the fact that Defendant did not consider the C&C surgeries in formulating the opinion that Plaintiff had surgery bi-monthly, but it appears to the Court that this was based on the severity of the Moh's surgery as compared to the C&C procedure, and there is ample evidence in the record that the issue of recovery time was only applicable as to the Moh's surgeries. The estimated recovery time reported to Defendant by Plaintiff's treating dermatologist and the peer review physician appears to be based on the Moh's surgeries alone. In Dr. Petronic-Rosic's peer review report, she refers exclusively to Moh's surgeries throughout.[3] (AR at 187-190.) Dr. Schuldenfrei opined that Plaintiff's lesions had become more aggressive, "necessitating more complicated surgery (Moh's surgical technique and plastic surgical reconstruction)" which required a recovery time of a week or more. (*Id.* at 111, 189, 418.) Plaintiff's subjective description of the recovery period between the two procedures also supports the evidence in the record that he did not require as much, if any, recovery time for the C&C procedures.

---

[3] Dr. Petronic-Rosic wrote that Plaintiff had six Moh's surgeries in the past two years and that Gorlin syndrome often required Moh's surgeries. (AR at 187-188.) Dr. Petronic-Rosic never made reference to Plaintiff's C&C procedures. Therefore, it is reasonable to conclude that Dr. Petronic-Rosic's opinion with regard to the amount of necessary recovery time is limited to Plaintiff's recovery time after Moh's surgeries. Dr. Petronic-Rosic described the need for recovery time after surgery as follows:

> After any such intervention, it is advisable that the claimant limit physical activity including bending, twisting or stretching of the area, which may cause bleeding and wound dehiscence. Mohs surgery, in particular, usually ends with a flap or graft of tissue, requiring extensive subtle stitching and it is advisable for the body area to be spared any physical activity other than what is absolutely necessary. This means no sudden movements, lifting, bending or stretching, and no lifting of items that weigh more than a few pounds, as any of these activities can interfere with wound healing in the first few days after surgery.

(AR at 189.) It is clear to the Court from this excerpt that Dr. Petronic-Rosic is referring in general to the reason why recovery time is required post-surgery, and then outlining in more detail the necessity for limiting physical activity during recovery after a Moh's surgery because of the special aspects of that procedure.

-9-

Plaintiff stated that the C&C procedures sometimes caused tremendous pain and made it difficult to sleep, but described in much greater detail the recovery process after a Moh's surgery. (*Id.* at 296-297.) Plaintiff concluded his statement of disability by writing that "[w]ith the number of Mohs procedures I have had in 2008, there is no way I could sustain work performance." (*Id.* at 297.)

The Court concludes that Defendant's decision to use the May 2007 to September 2008 timeframe was reasonable. This period coincides with the medical records provided to the peer review physician, Dr. Petronic-Rosic, and leads to the same conclusion that can be reached by the use of other time periods. The Court further concludes that Defendant was reasonable in focusing on Plaintiff's recovery time after the Moh's surgeries and that Defendant's exclusion of the C&C procedures from this formulation was not in error. Moreover, the Court finds that Defendant's reliance on Dr. Petronic-Rosic's revised opinion that, if working from home, Plaintiff would require three to four days of recovery time after each Moh's surgery, is likewise supported by the record. (AR at 190.) Both Dr. Petronic-Rosic and Dr. Schuldenfrei estimated a recovery time of approximately a week, but Dr. Petronic-Rosic revised her opinion if Plaintiff worked from home because one of the justifications for her initial specification of a week was to "obviate the need for bulky bandages to be worn to work." (*Id.* at 188.) Without the need to accommodate for the removal of bandages before a return to work, the estimate was logically reduced. Accordingly, Defendant's estimate that Plaintiff was undergoing surgeries that required a recovery of three to four days on a two month or greater basis is reasonable, and Defendant's use of this estimate in its decision was not arbitrary and capricious.

As to Plaintiff's objection to the conclusory nature of the vocational analyst's

statement that the common practice of employers would accommodate a three to four day recovery period on a bi-monthly basis, Magistrate Judge Lee noted that Defendant made allowances for weekends, such that it anticipated Plaintiff would miss no more than one day of work per month (i.e. one to two days following a bi-monthly surgery). (R&R at 18.) Because there was no indication that Plaintiff's employer approved this level of absence, and no other evidence in the record to support this level of absence as the common practice of employers, Magistrate Judge Lee found that it was necessary to determine whether Defendant's acceptance of the opinion in support of the decision was reasonable. (*Id.* at 18-19.) Magistrate Judge Lee pointed out that a vocational analyst's job is to determine whether an individual's limitations prevent him or her from working, and reliance on such an opinion is reasonable unless the vocational expert ignored unrefuted evidence. (*Id.* at 19; citing *Evans v. UnumProvident Corp.*, 434 F.3d 866, 879-80 (6th Cir. 2006) and *Nichols v. Unum Life Ins. Co. of Am.*, 129 F. App'x 498, 501-03 (6th Cir. 2006).) Magistrate Judge Lee further noted that Plaintiff did not submit any contrary evidence to Defendant to support his claims that this level of absence was not the common practice of employers. (*Id.* at 19.) Magistrate Judge Lee found that Defendant's acceptance of the vocational analyst's estimate that Plaintiff's absences could be accommodated if he worked at home was reasonable and concluded that Defendant's reliance on this opinion was not arbitrary and capricious. (*Id.*)

The Court agrees with Magistrate Judge Lee's conclusion. Plaintiff now states that statistical records establish that the common practice of employers would not accommodate his necessary level of absenteeism, but Plaintiff continues to include both Plaintiff's Moh's surgeries and the C&C procedures when calculating the number of work

-11-

days he would miss. (Pl.'s Objs. at 14.) As the Court has stated above, this level of absence was only calculated with the frequency of Moh's surgeries in mind, and Defendant acted reasonably in making that determination. Moreover, Plaintiff counts the three to four days of recovery for each of these procedures as missed work days, when the vocational analyst's opinion contemplated only a one or two day absence for each surgery, with the additional recovery days to fall on weekends. (*Id.* at 14-15.) The fact that Plaintiff's surgeries have not fallen on Fridays, as Plaintiff points out in its reply brief, does not negate the basic tenets of this opinion, which evaluated his ability to return to work with a certain set of limitations in place. (Court Doc. 41, Pl.'s Reply at 4.) As for Plaintiff's argument that Defendant should have conducted an investigation into the vocational expert's statement which was similar in depth to the investigation it conducted during other parts of assessing Plaintiff's claim, the Court finds that Defendant's choice not to investigate this statement may be somewhat inconsistent, but it does not rise to the level of arbitrary and capricious conduct.[4]

Accordingly, the Court finds that Defendant's acceptance of the opinion, in the absence of any contrary evidence, was reasonable. The Court concludes that Defendant did not act arbitrarily and capriciously in accepting this opinion and relying on it to make its final decision.

---

[4] In fact, one case Defendant cites in support of its position, *Douglas v. Bowen*, 836 F.2d 392 (8th Cir. 1987), involves vocational expert testimony which essentially indicates that employers would be able to accommodate one to two absences per month. *Id.* at 396 (noting that the VE stated that there was no work available if the claimant had absences in excess of one or two days a month). The opinion in the instant case is that Plaintiff would only need to miss one to two workdays every two months. Although Plaintiff continues to assert that he would need to be allowed the same recovery time for each C&C procedure as well as each Moh's surgery, and that the recovery time would require three to four days of missed work for each procedure, the Court has already addressed those issues and reached a conclusion in Defendant's favor. (Pl.'s Objs. at 14-15.)

-12-

## IV. CONCLUSION

Based on the above, the Court **ORDERS** the following:

- Magistrate Judge Lee's Report and Recommendation [Court Doc. 38] is **ACCEPTED AND ADOPTED** in its entirety;

- Plaintiff's Objections [Court Doc. 39] to Magistrate Judge Lee's Report and Recommendation are **OVERRULED**;

- Plaintiff's Motion for Judgment on the Pleadings [Court Doc. 22] is **DENIED**;

- Defendants' Motion for Judgment on the Pleadings [Court Doc. 25] is **GRANTED**; and

- Defendants' decision to terminate Plaintiff's LTD benefits is **AFFIRMED**.

A separate Judgment will enter.

**SO ORDERED** this 8th day of August, 2011.

                                        */s/Harry S. Mattice, Jr.*
                                        HARRY S. MATTICE, JR.
                                    UNITED STATES DISTRICT JUDGE